IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

Case No. 21-11911
On appeal from the United States District Court
for the Middle District of Florida

ELVA BENSON,

Plaintiff/Appellee,

v.

ENTERPRISE LEASING COMPANY OF ORLANDO, LLC;
& ENTERPRISE HOLDINGS, INC.,

Defendants/Appellants.

**NOTICE OF PROPOSED AMICUS BRIEF**

KRISTEN M. FIORE, B.C.S. (25766)
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

ARLENE KLINE (104957)
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, Florida 33401
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313
arlene.kline@akerman.com

*Counsel for Amicus Curiae, The Academy of Florida Management Attorneys*

# CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, the movant—the Academy of Florida Management Attorneys ("AFMA")—states that it does not have a parent corporation; is not a publicly held corporation; and that no publicly held corporation has 10% or greater ownership of it.

Pursuant to Circuit Rule 26.1-1, AFMA adopts the Certificate of Interested Persons filed by Appellants and make the following additions:

1. Fiore, Kristen, Counsel for The Academy of Florida Management Attorneys, Amicus Curiae.

2. Kline, Arlene, Counsel for The Academy of Florida Management Attorneys, Amicus Curiae.

3. The Academy of Florida Management Attorneys, Amicus Curiae.

59200748;1

## NOTICE OF FILING PROPOSED AMICUS BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), The Academy of Florida Management Attorneys ("AFMA"), files this Notice of Filing Proposed Amicus Brief and states:

On July 23, 2021, AFMA filed in this appeal a Motion for Leave to File Out of Time Amicus Brief in Support of Appellants and Motion for 7-Day Extension to File Proposed Amicus Brief requesting leave to file an amicus brief in support of Appellants and a 7-day extension of time within which to file the proposed amicus brief (the "Motion"). To date, this Court has not yet ruled on the Motion. However, consistent with Rule 29(a)(3)'s requirement that a proposed amicus brief accompany a motion for leave to file an amicus brief, AFMA now submits its proposed amicus brief for consideration along with the Motion. *See* [Exh. A].

Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S. (25766)
AKERMAN LLP
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

ARLENE KLINE (104957)
AKERMAN LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, Florida 33401
Telephone:  (561) 653-5000
Facsimile:  (561) 659-6313
arlene.kline@akerman.com

**ATTORNEYS FOR AMICUS CURIAE**

1

## FRAP 32(g)(1) CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation set forth in FRAP 27(d)(2). This document contains 140 words, excluding the parts exempted by FRAP 32(f) and 11th Cir. R. 32-4. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this case whom are registered through the CM/ECF.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

59200748;1

# EXHIBIT A

IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

Case No. 21-11911
On appeal from the United States District Court
for the Middle District of Florida

ELVA BENSON,

Plaintiff/Appellee,

v.

ENTERPRISE LEASING COMPANY OF ORLANDO, LLC;
& ENTERPRISE HOLDINGS, INC.,

Defendants/Appellants.

**BRIEF OF *AMICI CURIAE* THE ACADEMY OF FLORIDA
MANAGEMENT ATTORNEYS IN SUPPORT OF APPELLANTS'
INITIAL BRIEF AND IN SUPPORT OF REVERSAL**

KRISTEN M. FIORE, B.C.S. (25766)
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone:  (850) 224-9634
Facsimile:   (850) 222-0103
kristen.fiore@akerman.com

ARLENE KLINE (104957)
**AKERMAN LLP**
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, Florida 33401
Telephone:   (561) 653-5000
Facsimile:   (561) 659-6313
arlene.kline@akerman.com

*Counsel for Amicus Curiae, The Academy of Florida Management Attorneys*

59169347;4

# CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, the movant—the Academy of Florida Management Attorneys ("AFMA")—states that it does not have a parent corporation; is not a publicly held corporation; and that no publicly held corporation has 10% or greater ownership of it.

Pursuant to Circuit Rule 26.1-1, AFMA adopts the Certificate of Interested Persons filed by Appellants and make the following additions:

1. Akerman LLP, Counsel for Amicus Curiae.

2. Fiore, Kristen, Counsel for The Academy of Florida Management Attorneys, Amicus Curiae in Support of Appellants;

3. Kline, Arlene, Counsel for The Academy of Florida Management Attorneys, Amicus Curiae in Support of Appellants;

4. The Academy of Florida Management Attorneys, Amicus Curiae in Support of Appellants.

59169347;4

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST OF THE AMICUS CURIAE ............................................................1

STATEMENT OF THE ISSUE................................................................................3

INTRODUCTION .....................................................................................................4

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT .............................................................................................................7

   I.   The Court's Decision Will Result In Large-Scale Economic Consequences for Businesses Across the Country .............................................................7

   II.  The Unforeseeable Business Circumstances Exception Does Not Protect Employers from Litigation Costs Arising from WARN Lawsuits.............10

CONCLUSION.......................................................................................................14

CERTIFICATE OF COMPLIANCE....................................................................15

CERTIFICATE OF SERVICE .............................................................................16

59169347;4

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abramson v. DeSantis*, No. SC20-646, 2020 WL 3464376, at *1
(Fla. June 25, 2020)..............................................................................................8

D*eclaration of A State of Civil Emergency Related To the Covid-19 Epidemic*,
2020 WL 1931492, at *2 (City of Nashville Mar. 18, 2020) ...............................8

*Declaration of Local Emergency Measures Implemented By the City Manager of the
City of Miami, of Miami-Dade County, Florida*, 2020 WL 1931817, at *1 ............8

*Gross v. Hale-Halsell Co.*, 554 F.3d 870 (10th Cir. 2009).....................................11

*Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*,
173 F.3d 175 (3d Cir. 1999)................................................................................11

*Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056 (8th Cir. 1996).....................12

*Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2020 WL 1472217,
at *15 (W.D. Va. Mar. 26, 2020) ........................................................................11

*N.Y. v. U.S. Dept. of Labor*, 477 F.Supp.3d 1, 10 (S.D.N.Y 2021) ..........................5

*Pena v. Am. Meat Packing Corp.*, 362 F.3d 418 (7th Cir. 2004) ............................12

*Pennington v. Fluor Corp.*, 0:17-CV-02094-JMC, 2018 WL 3407724, at *7
(D.S.C. July 13, 2018) ........................................................................................12

*Scaffidi v. I.W. Indus., In*c., 05-CV-5746(JS)(WDW), 2007 WL 9706909,
at *4 (E.D.N.Y. Apr. 16, 2007)...........................................................................12

*Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276 (11th Cir. 2013) .......11

*Watson v. MI Industrial Holdings, Inc.*, 311 F.3d 760 (6th Cir. 2002) ...................12

59169347;4

## Statutes & Code Provisions

29 U.S.C. § 2102 ..................................................................................1

29 U.S.C. § 2102(b)(2)(A) ...................................................................10

20 C.F.R. §§ 639.7(a)(1), (d) ...............................................................11

20 C.F.R. § 639.9(b)(1) .........................................................10, 12, 13

20 C.F.R. § 639.9(b)(2) ........................................................................11

## Rules

FRAP 29(a)(4)(E) ...................................................................................2

FRAP 32(a)(5) ......................................................................................15

FRAP 32(a)(6) ......................................................................................15

FRAP 32(a)(7)(B) .................................................................................15

FRAP 32(a)(7)(B)(iii) ..........................................................................15

## Other Authorities

*States' COVID-19 Public Health Emergency Declarations, Mask Requirements, and Travel Advisory,* NATIONAL ACADEMY FOR STATE HEALTH POLICY, (July 14, 2021) https://www.nashp.org/governors-prioritize-health-for-all/ ...........................5

*Executive Order No. 202.68* CONTINUING TEMPORARY SUSPENSION AND MODIFICATION OF LAWS RELATING TO THE DISASTER EMERGENCY, *available at* https://www.governor.ny.gov/news/no-20268-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency ...................................................6

*COVID-19 Disaster Declarations*, FEMA, *available at* https://www.fema.gov/disaster/coronavirus/disaster-declarations# .........................8

59169347;4

*District of Columbia Declaration of Public Emergency* (Mar. 11, 2020), *available at* https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachme nts/MO.DeclarationofPublicEmergency03.11.20.pdf ...............................................8

Paul Dowdell, *Immunity from Liability in the Age of COVID-19*, AMERICAN BAR ASSOCIATION, (Aug. 2020), *available at* https://www.americanbar.org/groups/litigation/committees/trial-practice/articles/2020/immunity-from-liability-covid-19-trial-lawyers/ ...................9

54 FR 16042-0, Worker Adjustment and Retraining Notification ...........................13

*What Makes a Business Essential,* FORTUNE MAGAZINE, (Apr. 2020) ...................14

59169347;4

## <u>INTEREST OF THE AMICUS CURIAE</u>

The Academy of Florida Management Attorneys ("AFMA") is a statewide organization comprised of attorneys who represent the management of business entities throughout Florida. AFMA members regularly represent employers in cases, such as the one here, involving the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2102 *et seq*.

Since the beginning of the COVID-19 pandemic, AFMA members have routinely provided legal advice and guidance to their clients—located all across the State of Florida and across the country—on how to navigate the plethora of federal laws and regulations, as well as local and state emergency orders, relating to the COVID-19 pandemic. At the same time, this past year, many of these employers were frantically figuring out ways to avoid shutting down their operations amidst a deadly pandemic. One of the issues that frequently arose with employers during the early stages of the pandemic was the difficult decision to begin laying off employees as a result of the drastic impact COVID-19 had on their businesses. Many of these employers reasonably relied on the understanding that this unprecedented situation would be covered by the "natural disaster" exception under the WARN Act, which provides employers with the flexibility to take immediate remedial business actions to avoid long-lasting economic harm and permanent closures.

1

Accordingly, the clients of AFMA members have a vital interest in this case as it involves the interpretation of the notification requirements in the WARN Act, which generally require employers to provide 60 days' advance written notice of a "plant closing" or "mass layoff." The key issue in this case is the scope of the "natural disaster" exception to the WARN Act's 60-day notice requirement—namely whether plant closures and mass layoffs that mainly occurred during the beginning of the COVID-19 pandemic fall within this exception. This Court's decision will have nationwide implications, and a direct impact upon the legal obligations of all Florida employers—particularly those employers who were forced to close their doors during the first few months of the pandemic.[1]

---

[1] Pursuant to Rule 29(a)(4)(E) of Federal Rules of Appellate Procedure, AFMA states no counsel for a party authored this brief in whole or in part, and no person other than AFMA, their members, and counsel contributed money that was intended to fund the preparation or submission of this brief.

2

## STATEMENT OF THE ISSUES

1. Does the "natural disaster" exception to WARN's 60-day notice requirement only apply whenever a natural disaster is the direct cause of a plant closing or mass layoff?

2. Did the district court err in finding that the natural disaster exception of the WARN Act was not applicable to plant closings and mass layoffs resulting from the COVID-19 pandemic?

59169347;4

# **INTRODUCTION**

Once the COVID-19 pandemic spread to the United States, every American was living in an unprecedented time. No one knew how the federal government, or state or local governments, would react or handle this crisis—nor how this pandemic would impact everyday life.

With the rapid spread of this deadly virus, many cities and states began issuing emergency orders and executive orders requiring Americans to stay at home and avoid interacting with others. These orders were drastic and sudden—leaving many Americans feeling uncertain about their financial security.  This was especially true for business owners, namely employers whose businesses were customer-facing such as the hospitality industry. Indeed, many businesses had to close their doors to the general public and allow their employees to stay at home or work from home, if it was feasible, and if not feasible, to perform no work at all.

As a result of this unexpected and swift government action, many employers were left to deal with a <u>sharp</u> decrease in labor and customer demand, thereby creating no cash flow to the business and necessitating mass lay-offs and site closings just so they could survive another day. AFMA members observed—first hand—how employers looked for ways to change their business practices to avoid completely shutting down and closing their doors for good. The abrupt and widescale effects of the COVID-19 pandemic, a virus born in nature and affecting

the biology of mankind, are the same type of effects caused by the natural disasters that Congress had in mind when passing this WARN exception.

Most importantly, many clients of AFMA members are employers who complied with the local and state mandates that protected the general public from this deadly virus, yet simultaneously exerted all efforts to stay afloat. The district court's narrow interpretation of the natural disaster exception can potentially devastate these employers financially (who had to follow state and local mandates) by opening the doors to lawsuits that will require hundreds of thousands of dollars to defend and may result in even larger damages owed.

## SUMMARY OF THE ARGUMENT

"[T]he COVID-19 crisis has occasioned the temporary shutdown and slowdown of countless businesses nationwide, causing in turn a decrease in work immediately available for employees who otherwise remain formally employed." *N.Y. v. U.S. Dept. of Labor*, 477 F.Supp.3d 1, 10 (S.D.N.Y 2021). Indeed, by the end of March and April of 2020, virtually all 50 states had in place some form of executive order to address the COVID-19 crisis. *See States' COVID-19 Public Health Emergency Declarations, Mask Requirements, and Travel Advisory,* NATIONAL ACADEMY FOR STATE HEALTH POLICY, (July 14, 2021) *available at* https://www.nashp.org/governors-prioritize-health-for-all/. Many of these state government orders required all businesses—with only some exceptions—to close

59169347;4

their doors and shut down for an indefinite period of time. In some cities or states, employers who failed to comply with these government orders could be subject to hefty civil fines or even lose their business license. For instance, in the State of New York, an employer that did not adhere to the COVID-19 restrictions issued by Governor Andrew Cuomo was subject to a $15,000 fine for <u>each day</u> of non-compliance. *See Executive Order No. 202.68* CONTINUING TEMPORARY SUSPENSION AND MODIFICATION OF LAWS RELATING TO THE DISASTER EMERGENCY, *available at https://www.governor.ny.gov/news/no-20268-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.*

With the widespread issuance of executive and emergency orders, it is not unreasonable to conclude that the number of employers whose operations were negatively impacted by these orders was significant. Many of these same employers were subsequently forced to make difficult decisions, including the decision to reduce their labor force as a cost saving measure to compensate for the lack of revenue resulting from the government "shutdown" orders. The collective wave of governmental orders shutting down the U.S. economy is unparalleled to any other event in recent history, and the impact of this Court's decision will be crucial in determining whether many employers will be able to focus on economic recovery versus years of defending against WARN lawsuits.

59169347;4

# ARGUMENT

## I.    The Court's Decision Will Result In Large-Scale Economic Consequences for Businesses Across the Country.

During the early stages of the COVID-19 pandemic, AFMA members were on the frontlines with many employers in Florida and across the nation—scrambling to determine the new legal obligations imposed on businesses, as well as coming up with business practices that would allow employers to continue their operations in the midst of a once-in-a-lifetime pandemic. To make matters more complicated, emergency orders were issued through various levels of government from municipalities, cities, counties, state governments, and up to federal health agencies.

While counseling employers on state and local COVID-19 emergency orders, many AFMA members have personally observed their clients take unfortunate, gut-wrenching immediate and drastic business action to counteract the devastating effect of these shutdowns and the pandemic. Many of these employers, particularly in the hospitality and tourism industries, relied on the "natural disaster" exception to be able to take swift business action and prevent further job loss by going out of business—without running afoul of notice obligations under the WARN Act.

Given the literature and communications regarding the COVID-19 pandemic, it was entirely reasonable for employers to believe the "natural disaster" exception would be a readily available legal defense in conducting layoffs and closures. Federal agencies like the Federal Emergency Management Agency ("FEMA")

59169347;4

characterized President Trump's nationwide emergency declarations as "COVID-19 Disaster Declarations." *See COVID-19 Disaster Declarations*, FEMA, *available at* https://www.fema.gov/disaster/coronavirus/disaster-declarations#. Many states and cities also described or treated COVID-19 as a statewide natural disaster. For example, the State of Florida issued its executive orders under the State Emergency Management Act with the understanding that the COVID-19 pandemic was a "natural emergency." *See Abramson v. DeSantis*, No. SC20-646, 2020 WL 3464376, at *1 (Fla. June 25, 2020). Similarly, the City of Nashville issued an emergency order declaring COVID -19 a "natural disaster." *See Declaration of A State of Civil Emergency Related To the Covid-19 Epidemic*, 2020 WL 1931492, at *2 (City of Nashville Mar. 18, 2020). *See also Declaration of Local Emergency Measures Implemented By the City Manager of the City of Miami, of Miami-Dade County, Florida*, 2020 WL 1931817, at *1 (calling COVID -19 a "natural emergency whose effects are or will be significantly felt within the City of Miami"); *District of Columbia Declaration of Public Emergency* (Mar. 11, 2020), *available at* https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicEmergency03.11.20.pdf ("COVID-19 . . . is declared to be a natural disaster…")

However, the district court's narrow interpretation of "natural disaster" defies the ordinary meaning of the term as evidenced by its common use by the federal and

state government entities referenced above. This interpretation also now threatens the financial viability of many of these employers, who in good faith complied with the mandates of their state and local governments. Essentially, the district court's interpretation of the "natural disaster" exception tells employers that their compliance with the state or local COVID-19 emergency orders has exposed them to potential liability under the WARN Act or—at minimum—to incur significant legal fees in defending their actions in court.

The business community has been vocal about its fear of facing a "deluge" of lawsuits arising from the COVID-19 pandemic. *See* Paul Dowdell, *Immunity from Liability in the Age of COVID-19*, AMERICAN BAR ASSOCIATION, (Aug. 2020), *available at* https://www.americanbar.org/groups/litigation/committees/trial-practice/articles/2020/immunity-from-liability-covid-19-trial-lawyers/. Aside from potential liability, the business community is more concerned with the fact that defending against these lawsuits would be "prohibitively costly for many businesses to defend at this juncture in the pandemic." *Id.* In fact, Senate Majority Leader McConnell has stated that this flood of lawsuits could become a "second pandemic." As a result, many in the business community have expressed a need to reassure employers that their good-faith efforts to stay open will not be "further threatened by the specter of protracted coronavirus-related litigation." *Id.*

To that end, the COVID-19 pandemic is not over. Many businesses continue to recover from the effects of the temporary shutdown and now face a potential additional closure due to the COVID-19 variants. However, affirming the district court's decision in not allowing employers to avail themselves of the natural disaster exception during this unprecedented situation will leave them vulnerable to costly litigation and insurmountable exposure. This in turn may drive employers out of business, thereby leaving more individuals unemployed, which is contrary to the intent of the protections afforded by the WARN Act.

## II. The Unforeseeable Business Circumstances Exception Does Not Protect Employers from Litigation Costs Arising from WARN Lawsuits.

Employees, such as the Appellee, may argue that employers who were suddenly impacted by the government shutdowns are not out of luck and have an available recourse under the "unforeseeable business circumstances" ("UBC") exception. This exception applies when a sudden event makes providing 60 days' advance notice impossible, and an employer provides notice as soon "practicable." *See* 29 U.S.C. § 2102(b)(2)(A). Admittedly, the UBC exception and the natural disaster exception are similar in that they both can apply to events that occur suddenly and unexpectedly, and that are not within the employers' control. *See* 20 C.F.R. § 639.9(b)(1).

But there is an important practical distinction. Though both are affirmative defenses, the evidentiary burden of the UBC exception is noticeably more onerous

than the natural disaster exception. In other words, an employer must address many more issues—mostly factual ones—before it can prevail on this defense. Specifically, an employer must show: (1) "the circumstance was unforeseeable, and (2) the layoffs were caused by that circumstance." *See e.g. Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2020 WL 1472217, at \*15 (W.D. Va. Mar. 26, 2020) (citing *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 875 (10th Cir. 2009)). However, neither the WARN Act nor DOL regulations offer examples of circumstances that are *per se* unforeseeable. Instead, the DOL's test for "foreseeability focuses on an employer's business judgment—namely that the employer exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market." *See* 20 C.F.R. § 639.9(b)(2). In addition to proving foreseeability of an event, a court "must still evaluate the propriety of the employer's notice," particularly with respect to the timing and the substance of the notice. *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013); *see also* 20 C.F.R. §§ 639.7(a)(1), (d).

In sum, these are all fact-intensive issues that necessitate discovery and sometimes require a trier of fact to resolve. *See* Doc. 77, p. 12. As a result, courts have held that the applicability of the UBC exception in a particular scenario involves a highly factual inquiry to be assessed on a case-by-case basis—one that may not be resolved earlier than summary judgment. *See e.g. Hotel Emps. & Rest.*

*Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 180 (3d Cir. 1999); *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996); *Watson v. MI Industrial Holdings, Inc.*, 311 F.3d 760, 764 (6th Cir. 2002); *Pena v. Am. Meat Packing Corp.*, 362 F.3d 418, 421 (7th Cir. 2004). Therefore, it is not a surprise that the UBC exception seldom leads to a resolution during the early stages of litigation, such as on a motion to dismiss. *See e.g. Pennington v. Fluor Corp.*, 0:17-CV-02094-JMC, 2018 WL 3407724, at *7 (D.S.C. July 13, 2018)(denying a motion for judgment on the pleadings based on the UBC exception); *Scaffidi v. I.W. Indus., In*c., 05-CV-5746(JS) (WDW), 2007 WL 9706909, at *4 (E.D.N.Y. Apr. 16, 2007)(finding that the employer's assertion of the UBC exception was "doomed on a motion to dismiss" and that employer "would perhaps fare better by raising this argument on a motion for summary judgment.")

The cost and effort of litigating the UBC exception is a reason why employers relied on the protection of the "natural disaster" exception. As shown above, the UBC exception falls woefully short in protecting the employers who were left with no choice but to take decisive action to survive the widespread COVID-19 government shutdowns.

While it is true that the DOL's regulations state that a "government ordered closing of <u>an</u> employment site that occurs without prior notice also may be an unforeseeable business circumstance," *see* 20 C.F.R. 639.9(b)(1), this large-scale

12

and collective level of government-ordered shutdown caused by the COVID-19 pandemic was not the same type of government orders—applicable only to the closing of a single site--that either Congress or the DOL had in mind at the time of the WARN Act's passing.  Indeed, the DOL's commentary accompanying its final regulations provide examples of the government orders that were contemplated to fall within the UBC exception, and these examples are orders that were specific or unique to one plant or one site of employment and not the massive widespread closures that our nation experienced due to COVID-19. *See* Worker Adjustment and Retraining Notification, 54 FR 16042-0. This would be consistent with the ordinary meaning of a "business circumstance," which typically refers to events that affect a a single business, such as the abrupt cancellation of a client contract.

Accordingly, although the DOL's interpretation in the regulations was correct with regard to UBC exception, which states that "government ordered closing of a [single] employment site that occurs without prior notice also may be an unforeseeable business circumstance," *see* 20 C.F.R. 639.9(b)(1), its position regarding the natural disaster provision is faulty.  Here, the state and local emergency orders that were issued in the beginning stages of the pandemic were not circumstances applicable to one employer. Rather, these government orders impacted all individuals and businesses—similar to how a natural disaster impacts an entire community. "This crisis is almost an existential threat to just about every

13

single business in the country in a way we haven't seen." *See What Makes a Business Essential,* FORTUNE MAGAZINE, (Apr. 2020)(quote by Dan Auble, a senior researcher with the Center for Responsive Politics).  The effects of the pandemic on businesses across our great nation will be felt for years to come, just like the devastation caused by a natural disaster.

## <u>CONCLUSION</u>

For the reasons stated above, AFMA respectfully requests that the district court's order be reversed on appeal.

Respectfully submitted,

 /s/ Kristen M. Fiore
  KRISTEN M. FIORE, B.C.S. (25766)    ARLENE KLINE (104957)
  AKERMAN LLP                     AKERMAN LLP
  201 East Park Avenue, Suite 300     777 South Flagler Drive
  Tallahassee, Florida 32301        Suite 1100 West Tower
  Telephone:  (850) 224-9634      West Palm Beach, Florida 33401
  Facsimile:   (850) 222-0103       Telephone:  (561) 653-5000
  kristen.fiore@akerman.com       Facsimile:    (561) 659-6313
                                  arlene.kline@akerman.com

**ATTORNEYS FOR AMICUS CURIAE**

59169347;4

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 2,809 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii) and 11th Cir. R. 32-4. This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

59169347;4

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 30, 2021, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this case whom are registered through the CM/ECF.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, B.C.S.

59169347;4